IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HTP, INC.,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>FIRST MERIT GROUP HOLDINGS, INC., et al.,<br><br>　　　　　Defendants. | No. 2:21-cv-00732-BJR<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS |

## I. INTRODUCTION

Plaintiff HTP, Inc. ("HTP" or "Plaintiff") brought this lawsuit against Defendants First Merit Group Holdings, Inc. ("FMG"), NanoGen Technologies Group, Inc. ("NanoGen"), Barry Lee, Anthony Dutton, and David Richardson (the "Individual Defendants," and collectively, "Defendants"), asserting various claims arising from HTP's alleged loss of a business opportunity relating to certain emission control technology that it had developed. Presently before the Court is Defendants' motion to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. 52. Having reviewed the pleadings, the record of the case, and the relevant legal authorities, the Court GRANTS in part and DENIES in part the motion. The Court's reasoning is set forth below.

ORDER - 1

## II. BACKGROUND

A. Factual Background[1]

Since 2012, HTP has focused on developing diesel engine emission control technology for use in increasing internal combustion engines' fuel efficiency and decreasing their greenhouse gas emissions. Compl. ¶ 9. Evan Johnson, who became HTP's chief technology officer in 2015, had been primarily responsible for developing HTP's Internal Combustion Assistance technology ("ICA Technology"), which is a product designed to enhance diesel engine performance through the injection of hydrogen gas. *Id.* ¶¶ 9-11. In June 2018, in need of funds to continue developing the ICA Technology and related technologies, HTP entered into a joint venture agreement with JC Aviation Investments, LLC ("JCAI") concerning the formation of a new entity, HyTech Power, LLC ("HyTech"). *Id.* ¶ 12. HTP, in exchange for a 48% ownership interest in HyTech, assigned all of its interests in those technologies to HyTech. *Id*. JCAI, in exchange for a 52% interest, contributed "money, contacts, and know how" to that entity. *Id*. Johnson's employment with HTP thereafter ceased, and he became HyTech's chief technology officer. *Id.* ¶ 13.

HyTech began to experience financial difficulties in late 2019, leading HTP and JCAI to run into conflict over how to secure additional funding for the entity. Compl. ¶ 18. In early 2020, following the sudden death of JCAI's sole owner, HTP began to formulate its own plan to raise sufficient funds to buy out JCAI's interest in HyTech – thereby repurchasing the rights to the ICA Technology – and continue developing the technology itself. *Id.* ¶¶ 20-21. To that end, HTP engaged FMG, Barry Lee (one of FMG's owners), and Anthony Dutton (a senior manager at FMG) to value the technology and solicit investments on HTP's behalf. *Id.* ¶¶ 3-4, 21.

---

[1] The facts recited below are taken from Plaintiff's Complaint ("Compl.," Dkt. 1). For the purposes of the present motion, the Court takes the factual allegations in the Complaint as true.

ORDER - 2

Meanwhile, Johnson continued to develop the ICA Technology and test units of that technology ("ICA Units") with potential purchasers. Compl. ¶¶ 17, 22. Johnson's employment with HyTech ended in April 2020, but staying on as an HTP director, he began in May 2020 to test ICA Units with Nabors Industries, Ltd. ("Nabors"), an oil and gas drilling company. *Id.* ¶¶ 17, 23, 25. Those tests were successful, and Nabors became interested in purchasing ICA Units and forming a strategic alliance for purposes of further advancing the technology. *Id.* ¶¶ 26-27. In June 2020, Johnson and HTP presented that opportunity (the "Nabors Opportunity") to HyTech's board of directors as a way to resolve HyTech's need for additional funding. *Id.* ¶ 29. HyTech's JCAI-appointed directors, however, were uninterested in the Nabors Opportunity. *Id.*

Confronted with JCAI's disinterest in the Nabors Opportunity, HTP moved to purchase JCAI's interest in HyTech. FMG, Dutton, and Lee advised HTP to leverage the Nabors Opportunity in order to promote the investments necessary to complete the HyTech buyout. Compl. ¶ 36. Plaintiff alleges that, during this period, HTP and Johnson disclosed to FMG, Lee, and Dutton various confidential information about the technologies at issue and the synergies between those technologies and Nabors' operations. *Id.* ¶ 35. FMG, Dutton, and Lee then formulated a plan in which HTP would (1) negotiate with JCAI to purchase its interest in HyTech, and thereby reacquire the ICA Technology; (2) raise funds for that acquisition through a special purpose vehicle ("SPV") owned by FMG[2]; and (3) negotiate with Nabors towards an agreement to purchase ICA Units and form a strategic alliance with HTP. *Id.* ¶ 37. HTP agreed to that plan, and tasked FMG with negotiating directly with Nabors on HTP's behalf. *Id.* ¶ 38. Pending the plan's consummation, several entities and individuals – including, FMG, Dutton, Lee, David

---

[2] The SPV, at the time, was a shell company owned by FMG and registered in Canada. Compl. ¶ 36. Plaintiff alleges that HTP and FMG agreed that, if the FMG-formulated plan were successful, FMG would retain a 25% interest in the SPV as compensation for its efforts, and HTP would own the remaining 75% stake. *Id.* ¶¶ 38-39.

ORDER - 3

Richardson (a public relations professional working with FMG), and HTP's prior lender – agreed to fund Johnson's efforts in further developing the technology. *Id.* ¶¶ 5, 41.

In July 2020, HTP and JCAI began negotiating a deal for the purchase of JCAI's interest in HyTech, and by August 2020, they had reached a tentative agreement as to the price and other essential terms of the deal. Compl. ¶ 44. By that point, negotiations with Nabors – in which Richardson had then become involved, acting on HTP's behalf – had also made significant progress. *Id.* ¶¶ 44, 46. In particular, Nabors had expressed a willingness to purchase a large number of ICA Units and fund further testing of the technology through the proposed alliance. *Id.* While Nabors conditioned that deal on Johnson's successful completion of certain fuel-efficiency tests – which conflicted with JCAI's demands as to the timing of HTP's payment for its HyTech equity – FMG, Dutton, Lee, and Richardson devised a plan to resolve JCAI's and Nabors' concerns.[3] *Id.* ¶¶ 46-50.

Unbeknownst to HTP, while Johnson was performing his testing, FMG, Dutton, Lee, and Richardson had begun negotiating with Nabors to secure the Nabors Opportunity for FMG. Compl. ¶ 52. Plaintiff alleges that those defendants, armed with the confidential information they had obtained from HTP, made a deal by which Nabors would enter into a strategic alliance with the SPV owned by FMG. *Id.* To that end, in November 2020, FMG changed the SPV's name to NanoGen (a defendant in this case), which shortly thereafter began hiring employees and building operations. *Id.* ¶¶ 57, 59. FMG also persuaded Johnson to ditch HTP and join its effort to procure the Nabors Opportunity for itself. *Id.* ¶¶ 62-63. It was Johnson, around March 2021, who finally

---

[3] Specifically, the fuel-efficiency tests that Nabors requested would have taken longer to complete than the time JCAI was willing to allow HTP to pay for JCAI's interest in HyTech. Compl. ¶ 48. HTP, however, needed to complete the deal with JCAI and thereby reacquire the rights to the ICA Technology before it could complete a deal with Nabors. *Id.* The plan devised by FMG, Dutton, Lee, and Richardson was intended to reduce the time necessary for Johnson to complete Nabors' requested tests in order to satisfy JCAI's payment timing demand. *Id.* ¶¶ 49-50.

ORDER - 4

revealed the FMG-Nabors deal to HTP. *Id.* ¶ 64. While FMG subsequently offered HTP an interest in that deal in exchange for all of HTP's assets (including the rights to any technology HTP might reacquire from HyTech), HTP rejected that offer and cut off all communications with FMG, Dutton, Lee, Richardson, Johnson, NanoGen, and Nabors. *Id.* ¶¶ 58, 64-67.

B.  **Procedural Background**

1.  **Plaintiff's Lawsuit and Defendants' Motion to Dismiss**

Plaintiff filed this lawsuit on June 3, 2021, asserting claims for (1) breach of fiduciary duty (Compl. ¶¶ 72-78); (2) tortious interference with a business expectancy (*id.* ¶¶ 79-82); (3) civil conspiracy in furtherance of, and alternatively aiding and abetting, a breach of fiduciary duty and tortious interference (*id.* ¶¶ 83-86), and (4) declaratory relief (*id.* ¶¶ 87-90). Each of Plaintiff's tort-based claims are premised on Defendants' alleged usurpation of the Nabors Opportunity.

On November 4, 2021, Defendants filed a motion to dismiss the Complaint for lack of standing pursuant to Rule 12(b)(1) of the Rules of Federal Procedure, and for failure to state a claim pursuant to Rule 12(b)(6). In an order dated December 22, 2021, Judge Coughenour granted Defendants' motion pursuant Rule 12(b)(1) with respect to Plaintiff's tort-based claims. Judge Coughenour found, in light of HTP's lack of ownership over the ICA Technology or any agreement with Nabors to supply that company with ICA Units, that Plaintiff could not have suffered an injury traceable to Defendants' alleged conduct, as necessary to have standing. Dkt. 64 at 3-4. With respect to Plaintiff's claim for declaratory relief, Judge Coughenour dismissed that claim pursuant to Rule 12(b)(6), finding that Plaintiff did not adequately allege a justiciable controversy. *Id.* at 4. In light of those findings, Judge Coughenour declined to review Defendants' Rule 12(b)(6) motion as to Plaintiff's tort-based claims. *Id.*

ORDER - 5

### 2. The Ninth Circuit Appeal

Plaintiff appealed Judge Coughenour's order, and on December 27, 2022, the Ninth Circuit reversed. *See HTP, Inc. v. First Merit Grp. Holdings, Inc.*, No. 22-35184, 2022 WL 17958638 (9th Cir. Dec. 27, 2022). The Ninth Circuit held that Plaintiff had standing to assert its tort-based claims because it alleged an injury "from the loss of the deal" with Nabors. *Id.* at *1 ("FMG allegedly displaced HTP's deal by making one of its own. That is more than sufficient to establish standing."). In reaching this holding, the court rejected Defendants' argument that HTP's lack of ownership over the ICA Technology posed an impediment to standing, finding instead that, "[h]ad FMG fulfilled its alleged duties, HTP could have acquired the technology and made the deal with Nabors." *Id.* The court also found that the Complaint had presented a justiciable controversy as necessary to plead a claim for declaratory relief. *Id.* at *2.

On January 20, 2023, this matter was reassigned to this Court. Dkt. 76. At this point, Defendants' motion to dismiss Plaintiff's tort-based claims for failure to state a claim, pursuant to Rule 12(b)(6), remains unresolved.[4] The Court, therefore, will proceed to review whether Plaintiff's tort-based claims are subject to dismissal on that basis.[5]

### III. STANDARD OF REVIEW

A motion to dismiss for failure to state a claim under Rule 12(b)(6) is properly granted if the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief

---

[4] As noted above, the Ninth Circuit determined that Plaintiff's claim for declaratory relief was adequately pled. As such, Plaintiff's Rule 12(b)(6) motion as to that claim has been resolved, and the Court need not address it here.

[5] Defendants had submitted, with their motion to dismiss, supporting affidavits setting forth various facts that bear on the events at issue. Dkt. 53-54. While such materials may have been fairly considered by Judge Coughenour in ruling on Plaintiff's motion to dismiss for lack of standing, *see Bisson v. Bank of Am., N.A.*, 919 F. Supp. 2d 1130, 1135 (W.D. Wash. 2013), Defendants point to no basis – and this Court perceives none – for considering those affidavits in reviewing whether Plaintiff states a claim for relief. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) ("In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.").

ORDER - 6

that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016). When considering a motion to dismiss under Rule 12(b)(6), courts must accept the factual allegations in the complaint as true and construe such allegations in the light most favorable to the plaintiff. *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886-87 (9th Cir. 2018).

## IV. DISCUSSION

### A. Defendants' General Arguments for Dismissal

Defendants argue, as an initial matter and without reference to any of Plaintiff's specific claims, that the Complaint should be dismissed on the ground that Plaintiff "fail[s] to allege facts to demonstrate that it has a personal stake in the outcome of the controversy because it does not own the ICA Technology that forms the basis of all of its alleged causes of action." Mot. at 18-19. Defendants' argument is, effectively, the same as its standing argument that the Ninth Circuit has now rejected. As discussed above, the Ninth Circuit held that HTP's alleged "loss of the deal" with Nabors – brought about by "FMG's alleged decision to stop negotiating on behalf of HTP and to negotiate an alternative deal for itself instead" – constituted an "actual economic injury" that could be redressed by a favorable judicial decision. *HTP*, 2022 WL 17958638, at *1. This was so regardless of HTP's lack of ownership over the ICA Technology given that, "[h]ad FMG fulfilled its alleged duties, HTP could have acquired the technology and made the deal with

ORDER - 7

Nabors." *Id.* Accordingly, the Court is not persuaded that Plaintiff fails to assert viable claims on the ground that it lacks a "personal stake in the outcome" of this case.

Defendants also argue – again, as a general matter without reference to Plaintiff's specific claims – that the three Individual Defendants (Lee, Dutton, and Richardson) cannot be held personally liable for any torts committed by FMG. Mot. at 19-20. According to Defendants, Plaintiff offers no legal support for their personal liability, and the Complaint makes no factual allegations that would permit such a finding. This argument lacks merit.

In Washington, "corporate directors, officers, and agents may be personally liable for torts committed by the corporation when they are sufficiently involved in the commission of the tort." *R.N. v. Kiwanis Int'l*, 19 Wash. App. 2d 389, 415 (Wn. Ct. App. 2021); *see Annechino v. Worthy*, 175 Wash. 2d 630, 638 (Wn. Sup. Ct. 2012) ("An employee or agent is personally liable to a third party injured by his or her tortious conduct, even if that conduct occurs within the scope of employment or agency."). The Court finds that the Individual Defendants are alleged to have been sufficiently involved in the conduct upon which Plaintiff's claims are based. As discussed in further detail below, all of Plaintiff's claims are premised on HTP's engagement of FMG for purposes of accomplishing the Nabors Opportunity, and FMG's subsequent scheme to usurp that opportunity for its own benefit. Lee, Dutton, and Richardson are alleged to have been actively involved in that engagement and scheme. In particular, the Complaint alleges that HTP had initially hired Dutton and Lee not only to advise HTP with respect to the Nabors Opportunity, but also to negotiate with Nabors on HTP's behalf. Compl. ¶¶ 21, 35-37. While Richardson was not among those initially hired, he is alleged to have become closely involved in the engagement at some point thereafter. All three of the Individual Defendants allegedly advised HTP on the Nabors Opportunity; participated in the negotiations with Nabors; strategized on how to resolve conflicts

ORDER - 8

between the HTP-Nabors deal and the HTP-JCAI deal; and, ultimately, derailed the Nabors Opportunity in order to secure a competing FMG-Nabors deal. *Id.* ¶¶ 41, 44, 49-50, 52-53. These allegations are sufficient to permit a reasonable inference that the Individual Defendants may be held personally liable for the misconduct alleged in the Complaint.

The Court, then, will proceed to review the arguments Defendants make with respect to Plaintiff's specific claims.

### B. Claim for Breach of Fiduciary Duty

Plaintiff asserts a claim for breach of fiduciary duty, premised on the theory that "HTP reposed its trust and confidence in FMG, Dutton, Lee, Richardson and NanoGen to value" the relevant technologies, and to negotiate and secure the Nabors Opportunity for HTP. Compl. ¶ 74. Plaintiff claims that Defendants, by instead scheming to misappropriate the Nabors Opportunity for FMG's benefit, breached the fiduciary duty they owed to Plaintiff. *Id.* ¶¶ 76-77. Defendants argue that Plaintiff's claim fails on the ground that the Complaint does not adequately allege, in the first instance, the existence of a relationship between HTP and Defendants giving rise to fiduciary duties. Mot. at 20-21.

A fiduciary relationship arises in law based on relationships historically regarded as fiduciary, such as between an attorney and client, but "a fiduciary relationship can also arise in fact regardless of the relationship in law between the parties." *Liebergesell v. Evans*, 93 Wash. 2d 881, 890 (Wn. Sup. Ct. 1980). While "[a]s a general rule, participants in a business transaction deal at arm's length and do not enter into a fiduciary relationship," *Annechino v. Worthy*, 162 Wash. App. 138, 143 (Wn. Ct. App. 2011), *aff'd*, 175 Wash. 2d 630 (Wn. Sup. Ct. 2012), such a relationship may arise in fact "when there is something in the particular circumstances which approximates a business agency, a professional relationship, or a family tie, something which itself

ORDER - 9

impels or induces the trusting party to relax the care and vigilance which he otherwise should, and ordinarily would, exercise." *Alexander v. Sanford*, 181 Wash. App. 135, 173 (Wn. Ct. App. 2014) (quoting *Hood v. Cline*, 35 Wash. 2d 192, 196 (Wn. Sup. Ct. 1949)). "The facts and circumstances must indicate that the one reposing the trust has foundation for his belief that the one giving advice or presenting arguments is acting not in his own behalf, but in the interests of the other party." *Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*, 86 Wash. App. 732, 742 (Wn. Ct. App. 1997) (quoting *Burwell v. South Carolina Nat'l Bank*, 288 S.C. 34, 41 (S.C. Sup. Ct. 1986)). "In other words, the plaintiff must show some dependency on his or her part and some undertaking by the defendant to advise, counsel and protect the weaker party." *Id.*

The Court finds that Plaintiff has adequately alleged the existence of a fiduciary relationship between HTP, on the one hand, and FMG, Dutton, Lee, and Richardson, on the other. As discussed above, HTP alleges that it hired FMG, Dutton, and Lee in April 2020 to advise HTP with respect to the Nabors Opportunity and to raise funds for HTP's coordinated purchase of JCAI's interest in HyTech. *See* Compl. ¶¶ 21, 35. Richardson allegedly entered the frame, and became involved in the engagement, at some point thereafter. *See, e.g.*, *id.* ¶ 49. In furtherance of that engagement, HTP allegedly disclosed to FMG, Dutton, Lee, and Richardson various confidential information, and tasked those defendants not only with strategizing how to consummate the proposed deals with Nabors and JCAI, but also negotiating directly with Nabors on HTP's behalf. *See id.* ¶¶ 35-37; 44, 49-50, 52. In short, Plaintiff alleges that, through this engagement, HTP placed its trust in FMG, Dutton, Lee, and Richardson to give it advice, and represent it vis-à-vis Nabors, in furtherance of HTP's – and not FMG's – interests. *See Goodyear Tire*, 86 Wash. App. at 742. The Court finds that these allegations suffice to present "circumstances which approximate[] a business agency" from which fiduciary duties could arise.

ORDER - 10

*See Alexander*, 181 Wash. App. at 173; *see also, e.g.*, *Cogan v. Kidder, Mathews & Segner, Inc.*, 97 Wash. 2d 658, 663-66 (Wn. Sup. Ct. 1982) (finding that real estate broker breached fiduciary duties premised on agency relationship with plaintiff). Accordingly, Plaintiff's claim against FMG, Dutton, Lee, and Richardson does not fail for lack of a fiduciary relationship.

On the other hand, the Court finds that Plaintiff's claim against NanoGen fails. As noted above, NanoGen was an SPV formed by FMG to raise funds for purposes of enabling HTP to acquire JCAI's equity in HyTech. *See* Compl. ¶¶ 36-39. As such, at the time HTP engaged FMG and through the course of FMG's negotiation with Nabors, HTP relied upon the SPV simply as a means of holding the proceeds of FMG's fundraising efforts and then, eventually, owning the ICA Technology. Plaintiff offers no explanation as to how a fiduciary relationship could have formed based on that type of reliance, and the Court finds that it did not. Unlike the other defendants, NanoGen is not alleged to have, in any respect, advised HTP or acted on its behalf towards any third party. Accordingly, HTP's relationship with NanoGen does not implicate a relationship of trust and reliance from which fiduciary duties could arise. That FMG eventually wielded NanoGen to usurp the Nabors Opportunity does not mean that NanoGen, until that point, owed fiduciary duties to HTP.

Accordingly, the Court finds that Plaintiff's claim for breach of fiduciary duty fails only as against NanoGen, but not as against FMG, Dutton, Lee, and Richardson, for lack of an adequately alleged fiduciary relationship. The Court, therefore, dismisses this claim only as against NanoGen.

**C.    Claim for Tortious Interference with a Business Expectancy**

Plaintiff asserts a claim for tortious interference, premised on allegations that Defendants intentionally interfered with the Nabors Opportunity and various of HTP's business relationships relevant to that proposed deal. Compl. ¶¶ 79-81. To prevail on a claim for tortious interference,

ORDER - 11

a plaintiff must plead the following elements: "(1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage." *Leingang v. Pierce Cnty. Med. Bureau, Inc.*, 131 Wash. 2d 133, 157 (Wn. Sup. Ct. 1997). Defendants contend that Plaintiff fails to establish the first element. Mot. at 21-22. While Plaintiff does not dispute that HTP lacked a "valid contractual relationship" upon which to base its claim, Plaintiff argues that it adequately alleges a "valid business expectancy" comprised of the Nabors Opportunity. Opp. at 17.

"A valid business expectancy includes any prospective contractual or business relationship that would be of pecuniary value." *Tori Belle Cosms. LLC v. McKnight*, No. 21-cv-0145, 2022 WL 3927069, at *6 (W.D. Wash. Aug. 31, 2022) (quoting *Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Grp., Inc.*, 114 Wn. App. 151, 158 (Wn. Ct. App. 2002)). A plaintiff need not establish the existence of an enforceable contract to demonstrate a valid business expectancy. *CaptiveAire Sys., Inc. v. ITW Food Equip. Grp., LLC*, No. 09-cv-244, 2009 WL 10676075, at *6 (W.D. Wash. Sept. 28, 2009). "Rather, all that is required is a relationship between parties contemplating a contract, with at least a reasonable expectancy of fruition." *Id.*; *see Greensun Grp., LLC v. City of Bellevue*, 7 Wash. App. 2d 754, 769 (Wn. Ct. App. 2019) ("Washington courts require a plaintiff to show only that its future business opportunities are a reasonable expectation and not merely wishful thinking." (citation and quotation marks omitted)).

Defendants contend that HTP could not have had a valid business expectancy with respect to the Nabors Opportunity given that "it did not own the technology that it wanted to sell" to Nabors. Mot. at 21-22. The Court disagrees. As noted above, by August 2020, HTP and JCAI

ORDER - 12

had allegedly advanced sufficiently far in their negotiations such that they "were in tentative agreement as to the essential terms" – including the purchase price – of a deal by which HTP would reacquire the ICA Technology. *See* Compl. ¶ 44. Those alleged negotiations plausibly provided Plaintiff with a reasonable expectation that it would own the rights to that technology as necessary to consummate the Nabors Opportunity. *See Galactic Ventures, LLC v. King Cnty*., No. 05-cv-1054, 2006 WL 1587415, at *3 (W.D. Wash. June 7, 2006) (plaintiff adequately alleged a valid business expectancy with respect to a real estate deal in light of allegations that it "had engaged in lengthy negotiations," signed a letter of intent, and engaged third-party consultants). Similarly, the Complaint alleges that, by August 2020, negotiations with Nabors had progressed to the point at which Nabors had indicated that it was willing to purchase a large volume of ICA Units and fund further testing and development of the ICA Technology. *See* Compl. ¶ 46. While HTP's deals with JCAI and Nabors remained subject to certain then-unresolved issues – *i.e.*, the timing of HTP's payment for JCAI's equity in HyTech, and the completion of fuel-efficiency tests requested by Nabors – HTP is alleged to have been following a plan devised by FMG to resolve those issues. *See supra*, at 4, n.3. As such, accepting Plaintiff's allegations as true, HTP's expectation that both deals would materialize, and that it would ultimately secure the Nabors Opportunity, did not amount to "merely wishful thinking." *See Greensun*, 7 Wash. App. 2d at 769. Accordingly, the Court finds that Plaintiff adequately alleges a valid business expectancy. The Court, therefore, will not dismiss Plaintiff's tortious interference claim as to all Defendants.

### D. Claim for Conspiracy to Commit Breach of Fiduciary Duty and Tortious Interference

Plaintiff asserts a claim for civil conspiracy, based on allegations that "Defendants agreed amongst themselves to work in concert with one another to accomplish [the] improper common purpose of breaching the fiduciary duty they each owed HTP and in tortiously interfering with

ORDER - 13

HTP's valid business expectancies." Compl. ¶ 84.[6]  To establish a civil conspiracy, the plaintiff "must prove by clear, cogent and convincing evidence that (1) two or more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the object of the conspiracy." *Wilson v. State*, 84 Wash. App. 332, 350-51 (Wn. Ct. App. 1996).  Defendants do not contend that Plaintiff fails to plead a conspiratorial agreement, but instead contend, similar to their argument for dismissing Plaintiff's tortious interference claim, that "without ownership of the technology there can be no unlawful purpose o[r] unlawful means." Mot. at 22-23.

Again, Defendants' contention lacks merit.  As discussed above, while HTP may not have owned the ICA Technology upon which the Nabors Opportunity depended, the Complaint alleges that HTP, through FMG's assistance, had pursued – and made significant progress towards – deals with JCAI and Nabors that would have brought that opportunity to fruition.  *See, e.g.*, Compl. ¶ 46. According to the Complaint, HTP ultimately did not complete those deals and reacquire the ICA Technology because FMG secretly schemed to divert the Nabors Opportunity for itself despite having been engaged to secure that very opportunity for HTP.  Indeed, as the Ninth Circuit observed on appeal, "HTP alleges [] that it did not own the technology because FMG failed to negotiate its acquisition," and "[h]ad FMG fulfilled its alleged duties, HTP could have acquired the technology and made the deal with Nabors." *HTP*, 2022 WL 17958638, at *1.  The Court finds that the alleged scheme to usurp the Nabors Opportunity – allegedly in breach of the fiduciary duty owed to HTP, and in tortious interference with HTP's business expectancy – suffices to create an

---

[6] Plaintiff also claims, under the same count, that "[a]lternatively, each of the Defendants aided and abetted one another" in the same breach of fiduciary duty and tortious interference. Compl. ¶ 85. Defendants do not address that claim.  Accordingly, the Court will not dismiss it.

ORDER - 14

inference of an unlawful purpose or the use of improper means to obtain that result. *See, e.g.*, *Central Flyway Air, Inc. v. Grey Ghost Int'l, LLC*, No. 3:20-cv-05506, 2022 WL 17976099, at *9 (W.D. Wash. Dec. 28, 2022) (CEO's "breach of fiduciary duty through his misappropriation of" company's assets constituted an unlawful purpose); *see also 3BA Int'l LLC v. Lubahn*, No. 10-cv-829, 2012 WL 2317563, at *5 (W.D. Wash. June 18, 2012) (evidence of company founder's "attempt to misappropriate the [plaintiff's] Intellectual Property, dishonesty, and covert acts that undercut [company]" supported tortious interference claim that founder used unlawful means in breach of fiduciary duty to company).

Therefore, the Court will not dismiss Plaintiff's claim for conspiracy as to all Defendants.

## V.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. 52) is GRANTED in part and DENIED in part, as follows:

1. The Court GRANTS Defendants' motion as to Plaintiff's claim for breach of fiduciary duty against Defendant NanoGen, and DISMISSES that claim without prejudice.

2. The Court DENIES Defendants' motion as to Plaintiff's claim for breach of fiduciary duty against Defendants FMG, Barry Lee, Anthony Dutton, and David Richardson.

3. The Court DENIES Defendants' motion as to Plaintiff's claims for tortious interference, civil conspiracy, and aiding and abetting against Defendants FMG, NanoGen, Barry Lee, Anthony Dutton, and David Richardson.

SO ORDERED.

Dated:  February 21, 2023

Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER - 15