1

2

3

4

5

6

7

8

9

10

11

12

13

The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HTP, INC.,<br><br>     Plaintiff,<br><br>v.<br><br>FIRST MERIT GROUP HOLDINGS, INC., *et al.*,<br><br>     Defendants. | NO. 21-cv-732-BJR<br><br>**ORDER GRANTING DEFENDANTS'**<br>**MOTION FOR SUMMARY**<br>**JUDGMENT** |

## I.    INTRODUCTION

Plaintiff HTP, Inc. ("HTP") brought this lawsuit against Defendants First Merit Group Holdings, Inc. ("FMG"), NanoGen Technologies Group, Inc. ("NanoGen"), Barry Lee, Anthony Dutton, David Richardson, and Evan Johnson, asserting various claims arising from the parties' business relationships. HTP claims that Defendants caused it to lose necessary financing and business opportunities relating to its emission control technology. Currently pending before the Court is Defendants' motion for summary judgment, ECF No. 138. Having reviewed the materials[1]

---

[1] Including the motion, ECF No. 138; Plaintiff's response in opposition, ECF No. 146; and Defendants' reply, ECF No. 148; together with attached declarations and exhibits.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

- 1

and the relevant legal authorities, the Court will GRANT Defendants' motion. The reasoning for the Court's decision follows.

## II.    BACKGROUND

### A.  Factual Background

Phillip Jennings, Barry Lee, Evan Johnson, and their companies, have had long-term business dealings. Opp'n 2, ECF No. 146; Talevich Decl. Ex. 1, ECF No. 147-1. In 2014, Phillip Jennings, as Chief Executive Officer & Director of DEEC, Inc., entered into a transaction with Barry Lee, FMG's owner, whereby DEEC and Evan Johnson's company became known as HTP, Inc.,[2] and Evan Johnson became HTP's chief technical officer and director. Am. Compl. ¶¶ 11-12, 24; Johnson Decl. ¶ 2, ECF No. 142. Lee became an HTP shareholder. Lee Decl. ¶ 2, ECF No. 139; Counterclaim ¶ 21.

HTP focused on developing diesel engine emission control technology for use in increasing internal combustion engines' fuel efficiency and decreasing their greenhouse gas emissions. Am. Compl. ¶ 10; Johnson Decl. ¶ 2. HTP's Internal Combustion Assistance technology ("ICA technology") was designed to enhance diesel engine performance through the injection of hydrogen gas. *Id.* Johnson managed the development of the ICA technology. Am. Compl. ¶¶ 11-12; Johnson Decl. ¶ 2. These development efforts were expensive. Am. Compl. ¶ 13; Johnson Decl. ¶¶ 3-4. Despite having borrowed more than $3 million in December 2017 from Acamar Investment, Inc. ("Acamar"), secured by HTP's assets, by June 2018, HTP found it necessary to seek additional funds to continue developing its ICA and related technologies. Am. Compl. ¶ 13; Johnson Decl. ¶¶ 3-4; Counterclaim ¶ 12.

---

[2] Initially, the company was known as HyTech Power, Inc., but later changed its name to HTP Inc. To avoid confusion with a later created company, HyTech Power, LLC, the Court will only refer to this entity as HTP.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

- 2

In June 2018, HTP entered into a joint venture agreement with Joseph Clark, and his company, JC Aviation Investments, LLC ("JCAI"), and a new entity, HyTech Power, LLC ("HyTech") was formed to research, develop, manufacture, and market the ICA technology. *Id.* HTP contributed all its employees and assets, including its ICA and related technologies, to HyTech, and Johnson became HyTech's chief technology officer. Am. Compl. ¶¶ 13-14; Johnson Decl. ¶¶ 3-4. Following this transaction, HTP held a minority interest in HyTech. Counterclaim ¶ 14. Acamar continued to own a security interest in HTP's assets, which now was represented by HTP's 48% interest in HyTech. *Id.* JCAI contributed money, contacts, and experience, and as majority interest owner, could appoint a majority of HyTech's directors. *Id.*

Unfortunately, by late 2019, HyTech began experiencing financial difficulties, leading to disagreements between HTP and JCAI regarding additional funding. Am. Compl. ¶¶ 17-20; Counterclaim ¶¶ 15-16. And in early 2020, Clark, JCAI's sole owner, died suddenly; JCAI sought to wind-down HyTech while HTP sought funds to buy out JCAI's interest in HyTech. Am. Compl. ¶¶ 21-22.

On March 6, 2020, the HyTech Board determined that HyTech was insolvent and terminated all the employees. Small Decl. Ex. B, ECF No. 143. During this time, Jennings, on behalf of HTP, reached out to Lee (one of FMG's owners and an HTP shareholder), and Anthony Dutton (a senior manager at FMG) to value the technology and solicit investments on HTP's behalf so it could buy out JCAI's interest in HyTech. Am. Compl. ¶¶ 22, 35-36. FMG also began lending money to HTP to help fund Johnson and his team to they could continue refining the ICA and related technology and develop test units ("ICA Units"). *Id.* at ¶¶ 17-18; Counterclaim ¶¶19-24.

In May 2020, JCAI began the process of dissolving HyTech by filing a Petition to Appoint a Receiver. Counterclaim ¶ 18; Petition, ECF No. 38. And on May 27, 2020, HyTech filed a Motion

for a Temporary Restraining Order and sought a preliminary injunction in the receivership case, arguing that HTP had acted contrary to the HyTech Board's determination to suspend employment and halt operations. Counterclaim ¶¶ 27-28. The receivership court entered a Temporary Restraining Order on June 4, 2020. *Id.* ¶ 30. FMG expressed concern that JCAI was taking legal action to stop HTP from using HyTech's technology amidst ongoing demands for further funding to continue testing the technology. *Id.* ¶¶ 29-31. Johnson presented a proposal to the HyTech Board to resolve the on-going dispute and to continue funding the research and development of the ICA technology, but the HyTech board rejected the proposal and did not authorize further funding or development. *Id.* ¶ 32. On June 16, 2020, a preliminary injunction was entered in the receivership case that enjoined HTP "from conducting HyTech's business operations or using any of HyTech Power, LLC's products, assets, contact lists, and any other proprietary information in any way." *Id.* ¶ 33; Order Granting Preliminary Injunction, ECF No. 38.

Beginning in June 2020, FMG proposed that HTP raise the funds needed to buy out JCAI's interest in HyTech through a "Three-Part Deal" involving (1) negotiating the rights to the ICA and related technologies; (2) procuring an agreement with Nabors Industries, Ltd. ("Nabors"), to form a strategic alliance and purchase ICA Units; and (3) for FMG to solicit funds through a private placement offering for a shell Canadian business entity owned by FMG. Am. Compl. ¶¶ 36-38. HTP negotiated a purchase price of $10 million with JCAI, and JCAI agreed that HTP could test the ICA Units before it received payment, provided HTP signed an agreement to pay the purchase price within 60-90 days. *Id.* ¶¶ 45-46. If HTP did not pay the purchase price within that time frame, it would lose its interest in HyTech, and JCAI would then own the ICA technology and the ICA Units. *Id.* ¶ 46. David Richardson, a public relations professional working with FMG, and a shareholder in HTP, became involved in negotiations with Nabors to purchase ICA Units and fund

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

- 4

1  further testing if certain fuel-efficiency tests passed successfully. *Id.* ¶¶ 47-51. FMG also took steps

2  to retain securities counsel in British Columbia, Canada to advise on the Canadian Stock Exchange

3  offering contemplated by the Three-Part Deal. *Id.* ¶¶ 37- 40; Opp'n Ex. 26, ECF No. 147-26.

4      Unfortunately, Nabors' testing timeline was incompatible with JCAI's deadline for

5  payment. It was simply not possible to complete the logistics of closing all three transactions, and

6  HTP could not timely pay JCAI to buy out its ownership in HyTech. Am. Compl. ¶¶ 47-51. The

7  Three-Part Deal fell apart. By October 2020, FMG stopped funding HTP's efforts, Johnson stopped

8  all work on HyTech's ICA technology, and HyTech moved to enforce the preliminary injunction

9  that enjoined HTP from using HyTech assets. Counterclaim ¶¶ 35-39. On December 31, 2020, the

10  receivership court entered an Order of Contempt Sanctions against HTP for violation of the

11  preliminary injunction. *Id.* ¶ 40. Negotiations to mediate an agreement between HTP, JCAI,

12  HyTech, and Acamar failed. *Id.* ¶ 41.

13      According to HTP, Lee and FMG began negotiating with Nabors to secure the opportunity

14  for itself, excluding HTP, and persuaded Johnson to join the effort. Am. Compl. ¶ 54. In November

15  2020, FMG created NanoGen, and Nabors entered into a nondisclosure agreement with NanoGen.

16  *Id.* ¶¶ 60-61. In early 2021, HyTech, Johnson, Acamar, JCAI, and HTP contemplated a business

17  solution that would allow HTP to license the ICA technology and forge a deal with Nabors. *Id.* ¶¶

18  64-66. At the same time, FMG formalized its relationship with Nabors. *Id.* Dutton, acting on behalf

19  of NanoGen, entered into a Letter of Intent for the sale of NanoGen to a Nabors affiliate and

20  provided for Johnson's employment. *Id.* ¶¶ 67-68. FMG subsequently offered Jennings and HTP

21  an interest in the FMG-Nabors deal in exchange for all HTP's assets (including the rights to any

22  technology HTP might reacquire from HyTech), but Jennings rejected that offer and cut off all

24  ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

25   - 5

communications with FMG, Dutton, Lee, Richardson, Johnson, NanoGen, and Nabors. *Id.* ¶¶ 65-74.

On June 3, 2021, the King County Superior Court appointed a general receiver for HTP. *See* ECF Nos. 37, 38. On August 24, 2021, HTP filed a voluntary petition under Chapter 11 of the Bankruptcy Code. Counterclaim ¶ 46. FMG filed a proof of claim against HTP in the Bankruptcy Case to recover on monies it had advanced to HTP. Am. Compl. ¶¶ 75-78. Meanwhile, the Nabors affiliate, Nabors Energy Transition Services, LLC, and NanoGen entered into a series of transactions. *Id.* ¶ 79. Each individual Defendant—Johnson, Lee, Dutton, and Richardson—became a shareholder of NanoGen, and Johnson was hired by NanoGen to serve as its chief technology officer. *Id.* HTP filed this lawsuit in June 2021, asserting claims premised on Defendants' alleged usurpation of the Nabors' opportunity.

**B. Procedural Background**

The Court has detailed the procedural background in its Order granting in part Defendants' motion to dismiss, ECF No. 81. In brief, after this lawsuit was filed in June 2021, the Honorable Judge Coughenour dismissed this case for lack of standing by HTP, finding that in light of HTP's lack of ownership over the ICA technology or any agreement with Nabors to supply that company with ICA Units, HTP could not have suffered an injury traceable to Defendants' alleged conduct. ECF No. 64. HTP appealed, and the Ninth Circuit reversed and remanded. *See HTP, Inc. v. First Merit Grp. Holdings, Inc.*, No. 22-35184, 2022 WL 17958638 (9th Cir. Dec. 27, 2022). The Ninth Circuit held that HTP had standing to assert its tort-based claims because it alleged an injury "from the loss of the deal" with Nabors. *Id.*

On January 20, 2023, this matter was reassigned to this Court. ECF No. 76. Thereafter, this Court ruled on Defendants' dismissal motion, dismissing without prejudice Plaintiff's claim for

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

- 6

1    breach of fiduciary duty against Defendant NanoGen, but otherwise denying Defendants' motion

2    on the basis that HTP has sufficiently alleged its claims. ECF No. 81.

3         On October 10, 2023, HTP filed an Amended Complaint, asserting the following claims:

4    • Count I – Breach of Fiduciary Duty (against Defendants Johnson, Lee, Dutton,
        Richardson, and FMG);

5

6    • Count II – Tortious Interference with Business Expectancy (against all Defendants);

7    • Count III – Aiding and Abetting and Conspiracy (against all Defendants); and

8    • Count IV – Declaratory Relief (against FMG).

     Am. Compl. ¶¶ 80-99. Defendants seek summary judgment on all HTP's claims, contending that

9    all claims should be dismissed because "HTP simply does not have any facts or documentary

10   evidence to support its case." MSJ, ECF No. 138.

11

                              **III.    LEGAL STANDARD**

12        "Summary judgment is appropriate when, viewing the evidence in the light most favorable

13   to the nonmoving party, there is no genuine dispute as to any material fact" and the movant is

14   entitled to judgment as a matter of law. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017)

15   (quoting *United States v. JP Morgan Chase Bank Account No. Ending 8215*, 835 F.3d 1159, 1162

16   (9th Cir. 2016)); Fed. R. Civ. P. 56(a). "The moving party bears the initial burden of identifying

17   portions of the record that demonstrate the absence of a fact or facts necessary for one or more

18   essential elements of each claim." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653,

19   657 (9th Cir. 2020). "If the moving party meets this burden, the opposing party must then set out

20   specific facts showing a genuine issue for trial to defeat the motion." *Id.* If the evidence proffered

21   by the opposing party "is merely colorable, or is not significantly probative, summary judgment

22

23

24   ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

25    - 7

1    may be granted." *Anderson v. LibertyThe Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations

2    omitted).

3                                **IV.    DISCUSSION**

4            Defendants contend that HTP's lawsuit is primarily predicated on the idea that FMG, and

5    by extension the individual Defendants, owed HTP a fiduciary duty by virtue of FMG's purported

6    role as HTP's agent. According to Defendants, HTP's claims fail due to HTP's lack of evidence to

7    support an agency or fiduciary relationship. MSJ 16-22. Defendants also argue that HTP has no

8    evidence of tortious interference. *Id.* at 22-24. And with no underlying claims, Defendants argue

9    that the civil conspiracy claim cannot survive. Reply 15. Finally, Defendants contend that HTP's

10   claims against Richardson fail because there is no evidence demonstrating his participation in any

11   of the alleged facts. MSJ 16, 24-25. The Court will address these arguments in turn.

12       **A.  Breach of Fiduciary Duty**

13           HTP alleges that Defendants Johnson, Lee, Dutton, Richardson, and FMG, "formed a

14   principal-agent relationship wherein HTP was the principal and each of the Defendants were HTP's

15   agent in procuring a deal with Nabors." Am. Compl. ¶ 81. HTP asserts that these Defendants each

16   owed HTP a fiduciary duty of loyalty to act on HTP's behalf, but they intentionally breached their

17   fiduciary duties by usurping the Nabors opportunity for themselves. *Id.* ¶¶ 83-84

18           To prevail on a breach of fiduciary duty claim, HTP must prove "(1) existence of a duty

19   owed, (2) breach of that duty, (3) resulting injury, and (4) that the claimed breach proximately

20   caused the injury." *Munoz v. Bean*, 192 Wn. App. 1060, 2016 WL 885043, *9 (2016) (quoting

21   *Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP*, 110 Wn. App. 412, 433–34 (2002)). A

22   fiduciary relationship arises in law based on relationships historically regarded as fiduciary, such

23

24   ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

25    - 8

as between an attorney and client, but "a fiduciary relationship can also arise in fact regardless of the relationship in law between the parties." *Liebergesell v. Evans*, 93 Wn. 2d 881, 890 (1980).

While "[a]s a general rule, participants in a business transaction deal at arm's length and do not enter into a fiduciary relationship," *Annechino v. Worthy*, 162 Wn. App. 138, 143 (2011), *aff'd*, 175 Wn. 2d 630 (2012), such a relationship may arise in fact "when there is something in the particular circumstances which approximates a business agency, a professional relationship, or a family tie, something which itself impels or induces the trusting party to relax the care and vigilance which he otherwise should, and ordinarily would, exercise." *Alexander v. Sanford*, 181 Wn. App. 135, 173 (2014) (quoting *Hood v. Cline*, 35 Wn. 2d 192, 196 (1949)). An agency relationship may arise without an express understanding between the principal and agent and does not depend upon an express undertaking between them that the relationship exists. *Matsumura v. Eilert*, 74 Wn. 2d 362, 368 (1968). However, agency does not exist unless the facts establish that one person is acting under the direction and control of the other. *Id.* (citing Restatement (Second) of Agency § 1 (1958)). "Consent and control are the essential elements of an agency." *Moss v. Vadman*, 77 Wn.2d 396, 403 (1969).

Defendants contend that although the principals of HTP and FMG were working together on a business transaction, they did not have a principal-agent relationship. MSJ 17-18. Barry Lee, an FMG owner, provides to the court communications (emails and letters) between him and Phillip Jennings (HTP officer and director), Henry Dean (another HTP officer and director and HyTech director), Anthony Dutton (FMG senior manager), and Evan Johnson (then HyTech's CTO and HTP director). These communications demonstrate that HTP and FMG began contemplating a relationship in March 2020, an engagement letter agreement was drafted in April 2020 for FMG to provide services to HTP including financing and restructuring to be compensated by a monthly

advisory fee and success fees, but negotiations continued, and no agreement was ever reached. Lee Decl. Exs. 1-21, ECF No. 129. Early in the communications threads, Jennings sent an email to Dean and Johnson, stating, "I think that HTP should engage Barry and Anthony so that we have a formal arrangement. Just because I work with them a lot, and have for years, there still needs to be a written agreement or misunderstandings happen. Also, if they are engaged, we can share whatever information we want." Johnson Decl., Ex. 3. On April 8, 2020, Jennings sent an email to Dean and Johnson stating, "We should not commit to anything. Just try to find out their thoughts and who we will deal with and when." Johnson Decl. Ex. 2. Later, on September 27, 2020, Jennings sent an email to Lee specifically stating, "There is no mutual understanding between FMG and HTP. . . . I want out." Lee Decl., Ex. 20.

These communications do not evidence either consent or control. Further, Lee declares that by October 2020, "FMG had cut ties with HTP and was not structuring deal terms in any way and was not soliciting investors on HTP's behalf." *Id.* ¶ 22. And communications in November and December 2020, indicate that HTP was pursuing a deal separate from FMG. Small Decl., Exs. H, I, ECF No. 143.

HTP bears the burden of establishing that an agency relationship existed. *See Moss*, 77 Wn.2d at 403 ("The burden of establishing an agency rests upon the one who asserts it."). To counter Defendants' evidence and to support its assertion that agency exists, HTP proffers its reliance upon FMG's exclusive connections to entities necessary to complete the contemplated financial transaction and further offers evidence that HTP provided FMG access to HTP's cloud server. Opp'n 14 (citing Talevich Decl., Ex. 53). However, the proffered exhibit reveals that Johnson, as HyTech's chief technical officer, provided FMG access to HyTech's cloud server related to a forecast update; the exhibit does not provide evidence of access to HTP's information

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

nor that an agency relationship existed between HTP and FMG. HTP also submits emails in which Lee and Dutton identified themselves as having been engaged by HTP. *Id.* (citing Talevich, Decl., Exs. 22, 23). These emails, dated July 2020, show that the parties were working towards a "restructuring/recapitalization plan" following the untimely death of JCAI's sole owner, and were preparing a presentation about the HyTech technology and business model. These exhibits do not establish facts to demonstrate that FMG and its members were acting under the direction and control of HTP. HTP's allegations, assertions, and speculation are not evidence. HTP fails to identify specific evidence that creates any genuine issue of fact about whether FMG was HTP's agent or whether FMG owed any kind of fiduciary duty to HTP.

Accordingly, HTP cannot establish the first and necessary element of a breach of fiduciary duty, and this cause of action will be dismissed.

## B.  Tortious Interference

HTP alleges that all Defendants were aware of HTP's potential business opportunities, and they intentionally interfered, causing the termination of the expected opportunities. Am. Compl. ¶¶ 88-89. In Washington, a claim for tortious interference requires that the plaintiff establish the following elements: "(1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage." *Leingang v. Pierce Cnty. Med. Bureau, Inc.*, 131 Wn. 2d 133, 157 (1997).

Defendants contend that HTP fails to meet its burden to establish a dispute of fact as to whether any of the Defendants intentionally interfered with HTP's relationships by inducing or causing either JCAI or Nabors to terminate a business expectancy with HTP. MSJ 23. Defendants

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

argue that HTP could never have had a reasonable expectancy of entering into a contract with Nabors. Reply 11. Defendants assert that they did not enter into any agreement with JCAI or HyTech and neither JCAI nor HyTech breached any agreement with HTP. *Id.* After initial efforts failed, HTP began working with Young American Capital to finance the JCAI buy-out. *Id.*; Small Decl., Ex. I. Nabors could only have been a business prospect for HTP if HTP had purchased JCAI's interest in HyTech, and since that never occurred, HTP did not own any assets to sell Nabors. *Id.* Indeed, JCAI took legal measures[3] to expressly block HTP's efforts to sell HyTech's ICA technology to Nabors. *See* Small Reply Decl. Ex. 1, ECF No. 149. Defendants assert that they worked with Nabors on a completely different agreement involving different technology. MSJ 24. Defendants also assert that there is nothing in the record to support a claim of improper purpose or means. *Id.*

In response, HTP argues that the opportunity appropriated was the overall transaction with Nabors and Nanogen, which was predicated on HTP's acquisition and sale of the HyTech intellectual property. Opp'n 20. HTP alleges that a factfinder could find that "all parties envisioned an integrated suite of technology that existed under common control." *Id.* However, HTP offers no evidence to support its assertions. *See id.* at 20-21. At the dismissal stage, it was plausible that HTP had a reasonable expectation that it would end up owning the rights to HyTech's ICA technology, and that it would form a part of a transaction with Nabors based on successful testing and expressions of interest. *See* Order 12-13, ECF No. 81. However, plausible allegations are no longer

---

[3] After Acamar informed JCAI about testing at Nabors, JCAI sent a cease-and-desist letter to Nabors, HTP, and Acamar. *See* Am. Compl. ¶¶ 57-58. The court in the HyTech Receivership case issued a temporary restraining order, an injunction, and a contempt order, to prevent HTP from using any of HyTech's products, assets, or information. *See* Small Reply Decl. Ex. 1, ECF No. 149.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1  sufficient; HTP must now "set out specific facts showing a genuine issue for trial to defeat the

2  motion." *InteliClear*, 978 F.3d at 657.

3      To support its conclusion that the Defendants interfered with a valid business expectancy,

4  HTP cites only two pieces of evidence: (1) an email from Lee in February 2021 that was part of a

5  confidential settlement communication; and (2) a confidential email from Defendants' counsel in

6  June 2021 on the subject "HTP, Inc. v. NanoGen Technologies Group Inc. et al." *See* Opp'n 21

7  (citing Talevich Decl., Exs. 47, 52). In the Exhibit 47 email, Lee states: "looking like it might be

8  time to come clean about the future." There is nothing in this email thread to indicate what Lee

9  might have been referring to in this settlement communication. Without more, HTP's conjecture

10 regarding the meaning of the phrase is just that—conjecture, not facts. In the Exhibit 52 email,

11 which was written after HTP had been placed under a Receiver, Defendants' counsel communicates

12 that "[t]he Receiver has confirmed with me that HTP does not intend to take any action to interfere

13 with the Nabors/Nanogen transaction and does not believe that HTP would have any basis to do

14 so." It also references ongoing settlement discussions and opinions regarding HTP's rights at that

15 time. Exhibit 52 fails to support HTP's representation in its brief that Defendants "proposed to

16 orchestrate a takeover of HTP's interest in HyTech to completely work around HTP." Opp'n 21.

17 These are the only two pieces of evidence put forth by HTP, and they are insufficient to raise a

18 genuine issue of material fact regarding Defendants' interference.

19     Further, the Court notes that HTP fails to provide evidence to establish the first element of

20 this claim—the existence of a valid contractual relationship or business expectancy. There is no

21 contract, and a valid business expectancy only existed if HTP had been able to successfully

22 purchase JCAI's interest in HyTech. Since HTP's efforts to finance the JCAI buy-out were

23 unsuccessful, through either the Three-Part Deal or with Young American Capital, HTP did not

24 ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

25     - 13

1    own the ICA technology to sell Nabors. Accordingly, HTP cannot satisfy necessary elements of a

2    tortious interference claim, and this cause of action will be dismissed.

3    **C. Conspiracy**

4    HTP has also claimed that "the Defendants agreed amongst themselves to work in concert

5    with one another," or alternately, to aid and abet one another, in "breaching the fiduciary duty they

6    each owed HTP and in tortiously interfering with HTP's valid business expectancies." Am. Compl.

7    ¶¶ 93-94. To establish a civil conspiracy, the plaintiff "must prove by clear, cogent and convincing

8    evidence that (1) two or more people combined to accomplish an unlawful purpose, or combined

9    to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an

10   agreement to accomplish the object of the conspiracy." *Wilson v. State*, 84 Wn. App. 332, 350-51

11   (1996). "Because the conspiracy must be combined with an unlawful purpose, civil conspiracy does

12   not exist independently – its viability hinges on the existence of a cognizable and separate

13   underlying claim." *Williams v. Geico Gen. Ins. Co.*, 497 F. Supp. 3d 977, 985 (W.D. Wash. 2020).

14   Because the Court has determined that HTP fails to establish its claims of breach of fiduciary

15   duty and tortious interference, HTP's civil conspiracy claim must also fail. Accordingly, Count III

16   will also be dismissed.

17   **D. Richardson**

18   The Court has dismissed HTP's claims of breach of fiduciary duty and tortious interference

19   against Defendants, including Richardson. Therefore, the Court finds it unnecessary to discuss the

20   parties' arguments related to Richardson's individual liability.

21   **E. Declaratory Relief and Counterclaim**

22   HTP's final claim is for declaratory relief against FMG. Am. Compl. ¶¶ 96-99. This claim

23   relates to FMG's claim for monies lent to HTP. *Id.* ¶ 98. HTP denied that Defendants, specifically

24   ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

25

FMG, loaned funds to HTP. *Id.* FMG filed a counterclaim against HTP, asserting breach of contract and unjust enrichment claims related to the principal sum of $343,350.73 loaned by FMG to HTP, which is due, owing, and unpaid. Counterclaim ¶¶ 50-55, Small Decl, Ex. G, ECF No. 150-3.

FMG moved for summary judgment on its counterclaim. *See* Mot. Counterclaim. In response, HTP stated that it did not oppose the motion. Opp'n Counterclaim, ECF No. 154. HTP has conceded that it owes FMG $343,350.73, and agreed that the counterclaim amount will operate as an offset against any award on HTP's affirmative claims, and if HTP does not recover, then FMG's award will be administered as an allowed Class 2 Claim in the bankruptcy case. HTP's Resp., ECF No. 159. Therefore, the Court grants FMG's motion on its counterclaim, and HTP's claim for declaratory relief will necessarily be dismissed.

## V.    CONCLUSION

For the foregoing reasons,

1.  Defendants' Motion for Summary Judgment, ECF No. 138, is GRANTED;

2.  First Merit Group Holdings, Inc.'s Motion for Summary Judgment on its Counterclaims, ECF No. 150, is GRANTED;

3.  All claims are DISMISSED;

4.  Judgment will be entered by separate Order.

DATED this 5th day of February 2025.

Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT